United States District Court
Southern District of Texas
FILED
DEC 12 2012 DMG
David J. Bradley, Clerk
Laredo Division

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
**LAREDO DIVISION**

ERNESTO GARCIA,

Plaintiff,

v.

HILLARY CLINTON,

Defendant.

Civil Case No. 5:10-cv-101

**MEMORANDUM OPINION & ORDER**

***

The Court conducted a bench trial in this matter on December 10, 2012, in Laredo, Texas. At trial, the Court heard evidence and arguments from the parties. Additionally, the Court has reviewed the parties' proposed findings of fact and conclusions of law which were filed in the record in advance of the bench trial. (D.E. 49; D.E. 50).

After careful consideration of the evidence and arguments, the Court concludes that Plaintiff had failed to demonstrate by a preponderance of the evidence that he was born in the United States. Therefore, he is not entitled to a declaratory judgment that he is a United States citizen, and Defendant was justified in denying his passport application.

## I. Background

On or about June 16, 2009, Plaintiff Ernesto Garcia submitted an Application for a United States Passport to the United States Department of State. (D.E. 35-12 at 10).

Plaintiff's application was accompanied by a copy of a birth certificate issued by the Bureau of Vital Statistics Registrar's Office in Laredo, Texas. (D.E. 35-12 at 10). The birth certificate, which was signed by a midwife and filed on July 29, 1975, indicated that Plaintiff was born in Laredo, Texas on July 26, 1975. (D.E. 35-12 at 10).

After receiving Plaintiff's passport application, the Department of State sent Plaintiff a letter requesting additional information about the factual circumstances surrounding his birth because the midwife who signed Plaintiff's birth certificate had previously pled guilty to charges for fraudulently registering births in the United States. (D.E. 35-12 at 2). Plaintiff claims that he never received this July 6 letter. (D.E. 9 at 4). Regardless, when the Department of State did not receive a response from Plaintiff, it denied his passport application. (D.E. 35-12 at 1). The Director of the Passport Center explained in his November 4, 2010, letter to Plaintiff that the Texas birth certificate was insufficient to establish by a preponderance of the evidence that Plaintiff was born in the United States because the midwife who signed the certificate pled guilty to charges of fraudulently registering births in the United States and because they found a second birth certificate indicating Plaintiff was born in Nuevo Laredo,

Mexico, on September 11, 1974, ten months before Plaintiff was supposedly born in the United States. (D.E. 35-12 at 1).

Years before Plaintiff's passport application at issue in this case, Plaintiff filed a civil suit in Mexico to cancel his Mexican birth certificate on grounds that it was fraudulent. (D.E. 36-2 at 20). In that lawsuit, Plaintiff explained that his father fraudulently registered his birth in Mexico to ensure that Plaintiff could receive property from his parents, since only Mexican citizens were allowed to own property within 150 miles of the United States border at that time. (D.E. 36-2 at 21; D.E. 49 at 2). After hearing this admission by Plaintiff, which was substantiated by his parents, the Mexican court cancelled his birth certificate. (D.E. 36-2 at 24).

After Plaintiff's Mexican birth certificate was cancelled but before he applied for his United States passport, Plaintiff requested a certified copy of his Texas birth certificate from the Texas Department of State Health Services. (D.E. 35-9). Plaintiff's request was initially denied on December 2, 2008, because the Department was aware of Plaintiff's Mexican birth certificate. (D.E. 35-9). Soon afterwards, Plaintiff requested a hearing to appeal the denial and received one on April 21, 2009. (D.E. 35-10). At the hearing, the Hearing Examiner found that the "existence of the Mexican birth record was explained" and the "conflicting evidence rebutted" because the Mexican

court had cancelled Plaintiff's Mexican birth certificate and witnesses testified at the hearing that Plaintiff's Mexican birth certificate was fraudulent. (D.E. 35-10 at 4).

Thereafter, the Hearing Examiner ordered the Texas Department of State Health Services to issue Plaintiff a copy of his Texas birth certificate, as he found that Plaintiff had shown by a preponderance of the evidence that he was born in Laredo, Texas, on July 26, 1975. (D.E. 35-10 at 4). There is no indication that the Hearing Examiner was aware that the midwife who signed Plaintiff's birth certificate had pled guilty to charges for fraudulently registering births in the United States. (D.E. 35-10).

## II. Findings of Fact and Conclusions of Law

Under 8 U.S.C. § 1503:

> If any person who is within the United States claims a right or privilege as a national of the United States and is denied such right or privilege by any department or independent agency, or official thereof, upon the ground that he is not a national of the United States, such person may institute an action . . . against the head of such department or agency for a judgment declaring him to be a national of the United States.

8 U.S.C. § 1503(a). In a § 1503 action, the plaintiff bears the burden of proving, by a preponderance of the evidence, that he is an American citizen. *Escalante v. Clinton*, 386 Fed. App'x 493, 496 (5th Cir. 2010) (*citing De Vargas v. Brownell*, 251 F.2d 869, 870–71 (5th Cir. 1958)); 22 C.F.R. § 51.40. The Court must make a *de novo* determination of whether a plaintiff is a United

States citizen. *Patel v. Rice*, 403 F. Supp. 2d 560, 562 (N.D. Tex. 2005)

All doubts regarding citizenship must be resolved "in favor of the United States" and against the applicant seeking citizenship. *Bustamente-Barrera v. Gonzales*, 447 F.3d 388, 394–95 (5th Cir. 2006) (*citing Berenyi v. Dist. Dir., INS*, 385 U.S. 630, 637 (1967)). The Court may not grant citizenship out of equity or in the interests of justice; rather, there are "two sources of citizenship, and two only: birth and naturalization." *Miller v. Albright*, 523 U.S. 420, 423 (1998) (*citing United States v. Wong Kim Ark*, 169 U.S. 649, 702 (1898)).

In this case, Plaintiff has failed to prove by a preponderance of the evidence that he was born in the United States and, thus, is not entitled to a declaration that he is a citizen of the United States. First, existence of a valid state birth certificate does not conclusively determine citizenship. Instead, while a state birth certificate is considered "primary evidence of birth in the United States" for purposes of determining citizenship, Clinton, as Secretary of State, retains the discretion to require additional evidence of citizenship before granting a passport. *See* 22 C.F.R. §§ 51.42–51.44. Moreover, the contemporaneous filing of a foreign birth certificate in official records is "almost conclusive evidence of birth" in that country. *Pinto-Vidal v. Attorney Gen. of*

*U.S.*, 680 F. Supp. 861, 862 (S.D. Tex. 1987) (*quoting Liacakos v. Kennedy*, 195 F. Supp. 630, 631 (D.C. 1961)).

Plaintiff's additional evidence offered in this case to prove his United States citizenship is: 1) the fact that his Mexican birth certificate was cancelled by a Mexican court; 2) his father's testimony that he fraudulently registered Plaintiff's birth in Mexico so Plaintiff could receive land; and 3) his mother's testimony that she gave birth to her son while in the United States to purchase baby clothes. (D.E. 35-10 at 4; 35-1 at 7).

However, even when all of this evidence is considered together, Plaintiff has failed to prove by a preponderance of the evidence that he is a United States citizen. First, the Mexican order cancelling Plaintiff's birth certificate is assigned little weight. Indeed, in the Mexican proceeding, all of Plaintiff's allegations were automatically accepted as true because there was no evidence provided to the contrary. (D.E. 36-2 at 21, 24). Thus, because the Mexican judge accepted as true that Plaintiff's father fraudulently registered his Mexican birth certificate, he was left without any real choice to do anything other than cancel Plaintiff's Mexican birth certificate. (D.E. 36-2 at 24). Little weight is also assigned to Plaintiff's father's testimony that Plaintiff's birth was only registered in Mexico so that he could receive

family land. (D.E. 36-1 at 33-34). The central problem with this account is the fact that Plaintiff's birthdate on his Mexican birth certificate precedes his birthdate on his Texas birth certificate by ten months. (D.E. 36-1 at 4-9; D.E. 35-12 at 10). Quite simply, it does not make any sense that Plaintiff's father, when making a fraudulent birth certificate, would report that his son was born ten months before he was actually born. Plaintiff's father attempts to explain this discrepancy by arguing that he did not have time to provide Plaintiff's correct birthday on his Mexican birth certificate, so he allowed the notary public who assisted him in fraudulently recording the document to make up a birthday. (D.E. 36-1 at 23). However, this excuse is questionable since he apparently had time to provide the notary public with his own name and occupation, his wife's name and occupation, and the names and places of birth of Plaintiff's paternal and maternal grandparents. (D.E. 36-1 at 4-9).

Moreover, Plaintiff's father constantly provided conflicting answers at his deposition when asked for the year in which Plaintiff's Mexican birth certificate was created, testifying first that Plaintiff was around eight years old when it was created (putting the year between 1982-1983), and subsequently that it was created in 1974 and between 1977-78, putting Plaintiff between infancy and four years old,

respectively. (D.E. 36-1 at 20–21, 24). These contradictions make Plaintiff's father less than credible.

Plaintiff's mother's testimony is also subject to question. First, and as Defendant pointed out at trial, it is almost entirely too coincidental that, when Plaintiff's mother supposedly went into labor in the United States, she just happened to have been traveling with a friend who knew a specific midwife in Laredo to take her to see instead of taking Plaintiff's mother to a local hospital. When it is factored in that this specific midwife has since pled guilty to fraudulently registering births in the United States, the situation is nearly incredible.

However, aside from the incredible nature of the story itself, Plaintiff's mother made several statements at trial that were inconsistent with her deposition testimony that weigh heavily against her credibility. For example, at her deposition, she testified that after she gave birth to Plaintiff in the United States, her friend drove her and Plaintiff home to Nuevo Laredo in her husband's car. However, at trial, Plaintiff testified that she rode home to Mexico with Plaintiff in a taxi. Moreover, at her deposition, Plaintiff's mother also testified that her friend delivered Plaintiff's Texas birth certificate to her home in Mexico. Plaintiff's mother again deviated from her

story at trial, however, by testifying that she received Plaintiff's Texas birth certificate in the mail.

A conclusion that both of Plaintiff's parents are less than credible is reinforced by their mere testimony that Plaintiff's father falsely recorded Plaintiff's birth in Mexico, since their willingness to lie to one government suggests their willingness to do the same here. *Pinto-Vidal*, 680 F. Supp. at 863 ("Because Petitioner's father testified that he filed a false declaration with Mexican authorities in order to obtain certain benefits for his daughter, the IJ cannot be considered unreasonable for believing that the certificate from the midwife . . . could have been obtained for the same purpose."). Furthermore, the Fifth Circuit has held that in actions such as these, testimony by interested witnesses, like Plaintiff's parents, must be "taken with a grain of salt." *De Vargas*, 251 F.2d at 872. The Court heeds this advice in this instance.

The remaining evidence in this case also fails to support Plaintiff's claim that he is a United States citizen. First, there is no indication that Plaintiff resided in the United States as a child, and evidence on the record, specifically Plaintiff's fourth grade school report card, demonstrates that his childhood was spent in Mexico. (D.E. 36-2 at 4-6). Although Plaintiff had the opportunity to produce documentation to support his claim of U.S. citizenship in the form of hospital

or medical records, his mother's pre- and/or postnatal care, baptismal records, school records, or anything else of this nature, Plaintiff has failed to do so. (D.E. 35-12 at 2-3).

Second, Plaintiff's previous use of his Mexican birth certificate to his advantage calls his entire claim of United States citizenship into question, particularly when his deposition testimony is contrasted with his trial testimony. For example, at trial, Plaintiff freely admitted that when registering in school, he used the birthday on his Mexican birth certificate, September 11, 1974. This is confirmed by Plaintiff's fourth grade report card which states that he was nine years and nine months old in 1984, an age that could only be true had he and his mother used the birthdate listed on his Mexican birth certificate, September 11, 1974, to register him in grade school. (D.E. 36-2 at 4).

However, at his deposition, Plaintiff testified that he did not discover that his birthday on his Mexican birth certificate differed from his birthday on his Texas birth certificate until he began going to the University. (D.E. 35-5 at 10). He explained that he did not take the time to correct his birthday on the Mexican birth certificate at that point because he "didn't give it any importance" and "it was something that was fictitious." (D.E. 35-5 at 10). First, if Plaintiff's account is accepted, it is difficult to believe that he would not have

realized that his birthday was incorrect on all of his report cards throughout his academic career. Second, and more importantly, if Plaintiff truly believed his birthday on his Mexican birth certificate was fictitious, then why use that birthday when applying for school? These inconsistencies remain unanswered.

Third, it is uncontroverted that Plaintiff did not take any steps to cancel his Mexican birth certificate until he realized that it would be an impediment to facilitating his wife's immigration to the United States and to getting a United States passport. The convenient nature of this timing, while perhaps insignificant standing alone, becomes telling when it is considered alongside the remaining evidence in this case.

Finally, the fact that the midwife who signed Plaintiff's birth certificate later pled guilty to fraudulently registering births in the United States is particularly compelling evidence that casts doubt on Plaintiff's version of events. Interestingly enough, while it is true that the Texas Hearing Examiner came to the opposite conclusion of this Court, concluding in his opinion that Plaintiff had proven by preponderance of evidence that he was a United States citizen, nothing about the midwife's history of fraud appeared in his decision, indicating that the information was most likely not before him. (D.E. 35-10). Regardless, and as previously

discussed in the Court's memorandum and order denying summary judgment, this Court is not bound by the Hearing Examiner's decision since the United States was not a party to the suit. (D.E. 39 at 5-8).

**III. Conclusion**

In conclusion, Plaintiff has failed to demonstrate by a preponderance of the evidence that he was born in the United States, and, thus, he is not entitled to a declaratory judgment that he is a United States citizen by virtue of having been born in this country. Neither is there evidence that he has ever become a naturalized citizen. Accordingly, the Court finds in favor of the Defendant, Hillary Clinton. Pursuant to 8 U.S.C. § 1503 and 28 U.S.C. § 2201, the Court declares that Plaintiff is not a United States citizen by virtue of his birth and that Defendant did not err by denying his passport application. A separate judgment shall issue

**IT IS SO ORDERED.**

This, the 12th day of December, 2012.

Joseph M. Hood

JOSEPH M. HOOD, SENIOR U.S. DISTRICT JUDGE
Sitting by Designation